THE FRANK TEA & SPICE CO. *v.* THE L. SCHREIBER
& SONS CO.

*Injunction—Discharging sewage and waste in violation of
municipal health regulations—Sewer constructed as sub-
stitute for natural drain—Property owner denied damages
for back-up in basement, when.*

1. In suit to restrain discharge of water and sewage into
   sewer constructed as substitute for natural stream, from
   which it backed up into plaintiff's property, no money
   damages will be awarded where the amount coming from
   defendant's property was such small proportion of
   amount pumped out by plaintiff that damage caused
   could not be estimated, and defendant claimed plaintiff
   was negligent in use of pump.
2. Defendant will be restrained from discharging sewage into
   covered drain in city, which had been built to take place
   of natural stream, where its use as sewer had been
   abandoned, in view of Sanitary Code authorized by
   Section 1235, General Code, and made effective by Section
   1236.

(Decided December 28, 1925.)

APPEAL: Court of Appeals for Hamilton county.

*Messrs. Harmon, Colston, Goldsmith & Hoadly,*
for plaintiff.
*Mr. Murray Seasongood, Mr. W. J. Overbeck,*
and *Mr. George H. Kattenhorn,* for defendant.

CUSHING, J. Plaintiff prosecutes this action to
restrain the defendant from discharging water and
sewage from its property into what is called the
"Deer Creek Sewer," and for damages growing

[1] Municipal Corporations, 28 Cyc. p. 1339; [2] Id.

out of a block thereof, which caused water and sewage to flow into its building.

Some time between the years 1834 and 1846, the city of Cincinnati and the owners of the property west of Deer Creek constructed a large drain, and walled it in with stone. Each property owner built the part through his property; the city constructed the part across the proposed streets. The property and Deer creek were subsequently filled to the level of a projected street, so that said sewer or drain was between 40 and 50 feet below the surface. The purpose of constructing the sewer or drain was to take the place of Deer creek, which at that time was an open stream that drained the property east, west, and to the north of Deer creek. It was never made a part of the sewer system of the city, although it was used by it for some time as a storm water drain.

Subsequently, the city constructed two sewers, parallel to the Deer creek sewer, one in Eggleston avenue and the other in Culvert street, at a level higher than Deer creek sewer. The purpose and character of the Deer creek sewer was defined by the Supreme Court of Ohio in *Winslow* v. *Fuhrman*, 25 Ohio St., 639, at page 649:

"They intended absolutely and forever, to extinguish the natural stream, and to supersede it by a sewer which should be to each proprietor a *quasi* natural stream, subjecting him to no new obligations, such as were not incident to the natural stream."

The court also stated, at page 648: "I think the sewer has long ago served the purpose intended. It ought, long before this injury happened, to have

been superseded, and have become a thing of the past.''

In recent years some of the abutting property owners used it as a sewer. They have abandoned that use, and presumably have connected with one of the high level sewers. It was used to carry off the surface water from a number of streets, and the defendant has been and is now using it to carry water and sanitary sewage from its property. The claim for damages grows out of the fact that the sewer caved in, that water and sewage backed up into plaintiff' property, and that plaintiff was compelled to install pumps to pump the water from its subbasement.

According to the evidence, the amount of water and sewage that flowed from the defendant's property into the sewer was in such a small proportion to the volume claimed to have been pumped out by the plaintiff that it is impossible to estimate the amount of damage caused by the defendant, and therefore no money damages will be allowed. There is no way of estimating the amount of the damage caused by the defendant. When that question is considered in connection with the claim that plaintiff was negligent in the use of its pump, there is also the question whether the plaintiff exercised due care so as to minimize the damages.

In the record, the briefs and the arguments of counsel, much is said of the property rights in this so-called sewer, the rights acquired by long usage, and we might say most every phase of easement or use known to the law was argued. We do not discuss or pass upon any of these questions. It is sufficient to say that this sewer or drain is located in the city of Cincinnati. It is not, and never has

been, a part of the sewer system of the city. It was not constructed for any purpose other than to take the place of a natural stream, and we know of no authority that gives a property owner the right to use a natural stream, or a substitute therefor, as the defendant has used this substitute. In fact, its use is in direct contravention of the statutes of Ohio. The chapter of the General Code entitled "State Department of Health" includes Section 1236, General Code, the last sentence of which is as follows:

"Every provision of the Sanitary Code shall apply to and be effective in all portions of the state."

The Sanitary Code promulgated in pursuance of the authority of this chapter (General Code, Section 1235) contains regulation 112, the last sentence of which reads:

"Nor shall any person use a storm water drain constructed for the purpose of carrying storm water, roof water, cistern overflow, or water of like character, as a means of disposing of house slops, soapsuds, sewage, liquid manures, or other putrescible or offensive wastes."

This regulation refers particularly to storm water drains. The sewer was constructed to be, and in fact was, a substitute for Deer creek. Its purpose and use was that of a drain. The acts of the defendant in permitting sewage to flow into this drain are in direct violation of the health regulations of the state.

We might add that the ordinances of the city of Cincinnati were neither pleaded nor proved, yet in looking up this question we examined Section 553 of the Code of Ordinances of 1910-1913, and call attention to the fact that there are some mandatory provisions in that section.

Our conclusion is that the prayer for money damages should be denied, and that plaintiff is entitled to equitable relief, restraining the defendant from discharging sewage or other offensive waste into said drain or sewer.

*Decree accordingly.*

BUCHWALTER, P. J., and HAMILTON, J., concur.